**Stephanie WELDY, Plaintiff–Appellant**

v.

**Donald HATCH, Individually; Steve Walker, Individually, Defendants–Appellees.**

No. 11–40523.

United States Court of Appeals, Fifth Circuit.

April 30, 2012.

---

Christopher John Gale, Gale, Wilson & Sanchez, P.L.L.C., San Antonio, TX, for Plaintiff–Appellant.

Alissa Anne Adkins, Melissa Diane Vela–Martinez, Esq., Assistant County Attorney, District Attorney's Office, Myra Kay Morris, Royston, Rayzor, Vickery & Williams, L.L.P., Corpus Christi, TX, for Defendants–Appellees.

Before REAVLEY, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM: [*]

Following a final judgment, Plaintiff–Appellant Stephanie Weldy ("Weldy") appeals from a partial summary judgment against her. Weldy sued Appellees Donald Hatch ("Hatch") and Steve Walker ("Walker") claiming they violated her constitutional rights by arresting her without probable cause and using excessive force in doing so. Weldy also brought other claims, including a state law cause of action for assault and battery.

Pursuant to a magistrate judge's memorandum and recommendation, the district court granted in part and denied in part Appellees' motion for summary judgment. Weldy voluntarily dismissed some of her claims. A jury trial was held on the remaining false arrest claim, which resulted in a defense verdict not challenged here. Weldy then filed this appeal of the district court's order granting summary judgment in favor of Appellees on her § 1983 excessive force claim and state-law assault and

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

battery claim. For the following reasons, we AFFIRM.

## I. BACKGROUND

Shortly before 3:00 a.m. one morning, Weldy's daughter, Amanda, was stopped for a traffic violation in Robstown, Texas. Amanda was arrested pursuant to an outstanding warrant for theft by check. A small amount of marijuana was also found in her car. Amanda was allowed to call Weldy to retrieve the car she was driving. Weldy immediately went to the scene with her son. There, Weldy asked officers Hatch and Walker to release her daughter into her custody, but the officers refused. Weldy asked to speak to her daughter and the officers agreed. After speaking to her daughter in the back of the squad car, Appellees allegedly pushed Weldy away from the car and shut the door to the patrol car with Amanda inside.

Weldy continued to argue about her daughter's arrest and pleaded with the officers to release her daughter, which they again refused to do because of Amanda's outstanding warrant. After further arguments, Weldy alleges that as she prepared to leave the scene, Hatch sarcastically told her to "have a good night." Weldy responded, "ya'll enjoy the rest of your f\* \* \*ing night." At this point, Walker said "You know what, you know what ma'am, come here, come here, listen to me, listen, you're about to go to jail." Walker attempted to grab Weldy and she pulled away. According to Weldy, Appellees twice slammed her head on the hood of the patrol car, causing her severe pain, loss of consciousness, bruising, and a concussion.

The video evidence shows, however, that after Weldy pulled away from Walker, he attempted to restrain her. Hatch then assisted Walker, and Weldy was placed on the hood of a patrol car. Weldy began to struggle with the officers as they attempt-

ed to cuff her. Officers repeatedly told Weldy to stop resisting. At one point, Weldy attempted to turn back toward the officers and Appellees forced her back face-down to the hood of the car. After a short scuffle on the hood of the car, officers pulled her arms high up across her back to cuff her wrists. At this point, the officers succeeded in subduing Weldy and placed her in the patrol car. The video does not show that Appellees ever purposefully attempted to hurt Weldy or slam her head against the patrol car. Weldy appears to be conscious for the duration of the altercation.

Weldy was charged with disorderly conduct and resisting arrest. The disorderly conduct charge was dismissed and the District Attorney's office declined to pursue the resisting arrest charge.

Weldy was subsequently treated for multiple injuries. Weldy's complaint to the sheriff's department resulted in an internal investigation which found that the officers did not use excessive force but that Hatch did violate various internal rules of conduct. Walker resigned for unrelated reasons, and Hatch was disciplined. Thereafter, Weldy filed this lawsuit.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Noble Energy Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir.2008). Summary judgment is thus proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation marks omitted). "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.2003).

## III. DISCUSSION

In her appeal, Weldy contends that material issues of disputed fact exist regarding her § 1983 excessive force and state-law assault and battery claims. Weldy argues that the district court erred by failing to consider that the parties asserted two different sets of facts and that it misinterpreted the reasonableness inquiry necessary to establish an excessive force claim under § 1983. Weldy asserts that because a jury ultimately found that no probable cause existed to arrest her,[1] that there was no need for the use of *any* force against her.

### A. *42 U.S.C. § 1983*

Weldy brings her excessive force claim pursuant to § 1983. To state a claim under § 1983, Weldy "must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

To prevail on her claim that Appellees used excessive force in violation of the Fourth Amendment, Weldy must establish " '(1) injury, (2) which resulted directly and only from a use of force that was clearly

excessive, and (3) the excessiveness of which was clearly unreasonable.' " *Collier v. Montgomery,* 569 F.3d 214, 218 (5th Cir.2009) (quoting *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir.2005)). Thus, we examine whether Weldy raised a genuine issue of material fact regarding each element of the excessive force claim.

The parties do not dispute that Weldy raised a fact issue on the "injury" prong. The thrust of this appeal thus turns on whether the force used by Appellees was clearly excessive and unreasonable. An officer's use of force is only constitutionally impermissible where it is "objectively unreasonable under the circumstances." *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir.2008). Objective reasonableness "depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.* The need for force must be analyzed by considering " 'whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Collier,* 569 F.3d at 219 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Weldy argues that because a jury found no probable cause for the arrest, that *any* use of force at all, was necessarily excessive. Whether that arrest was legitimate or not is a separate question, however. *See, e.g., Freeman v. Gore,* 483 F.3d 404, 417 (5th Cir.2007) ("That the deputies' arrest of Freeman was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive.

---

1. This contention is based on the false arrest claim pursuant to § 1983 that went to trial. There, the jury's verdict concluded that there was not probable cause to arrest Weldy for disorderly conduct, resisting arrest, or for in-

terference with public duties. Nonetheless, the jury found that both Hatch and Walker were entitled to qualified immunity. Weldy voluntarily dismissed her state-law false arrest claim.

Rather, Freeman's excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." (collecting cases)).

Our decision in *Collier* is instructive here. In that case, the officer, Harris, attempted to arrest the plaintiff, Collier, who initially resisted. 569 F.3d at 216. Harris then "pushed Collier onto the hood of the police cruiser and forced Collier's right arm behind his back." *Id.* We concluded that the force used was constitutionally permissible under the circumstances:

> The video evidence shows that Collier physically resisted when Harris attempted to place handcuffs on him. Harris grappled with Collier for several seconds and was able to subdue Collier after pushing him onto the hood of the cruiser. Harris's use of force and the resulting bruises were not excessive under the circumstances.

*Id.* at 219.

■ From the perspective of a reasonable officer on the scene, the use of force effectuated by Appellees here was not excessive. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 844 (5th Cir. 2009). Indeed, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. The evidence does not show that Appellees struck Weldy, attempted to hurt her, or used more force than necessary to accomplish the arrest.

■ Weldy posits that the reasonableness inquiry is different in kind from the implication of a constitutional violation. Weldy is mistaken. The Supreme Court has made clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395, 109 S.Ct. 1865; *see also Peterson*, 588 F.3d at 844 ("The touchstone of the Fourth amendment is . . . reasonableness.").

■ Weldy also relies on her own characterization of the incident in question to raise a fact issue. However, where, as here, we have a videotape, the validity of which is not questioned, we do not need to rely on parties' subjective construction of events. *See Collier*, 569 F.3d at 219. The video negates the claim of constitutionally impermissible excessive force.

### B. Assault and Battery Claim

■ Weldy relies exclusively on an argument of unconstitutional use of excessive force to support her argument that Appellees committed assault and battery in violation of Texas law and does not contend that she could prevail on the latter while losing on the former. Accordingly, this claim fails as well. To whatever extent other arguments may be made to support her state-based claim, Weldy has failed to brief them on appeal and the issue is thus waived. *See, e.g., Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir.2007) ("[F]ailure to advance arguments in the body of the appellant's brief, even when those issues were referenced in the Statement of Issues section, result[s] in waiver of those arguments." (quoting *Justiss Oil Co., Inc. v.*

*Kerr–McGee Ref. Corp.,* 75 F.3d 1057, 1067 (5th Cir.1996))).[2]

## IV. CONCLUSION

For the above-mentioned reasons, we AFFIRM the judgment of the district court in favor of Defendants–Appellees on the excessive force and assault and battery claims.

**2.** We thus need not address to what extent Appellees are protected by officer privilege, *see Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 579 (Tex.2001) ("A police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest, taking care that the force used is commensurate with the necessity." (citing TEX. PENAL CODE § 9.51)), or official immunity, *see Telthorster v. Tennell,* 92 S.W.3d 457, 465 (Tex.2002) (Official immunity protects officers to the extent that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred").