Filed 11/20/15  Slowikowska v. San Diego Sheriff's Dept. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERTA SLOWIKOWSKA,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>SAN DIEGO SHERIFF'S DEPARTMENT et al.,<br><br>        Defendants and Respondents. | D066597<br><br><br>(Super. Ct. No. 37-2012-00052251-CU-CR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Reversed with directions.

Law Offices of Michael R. Marrinan and Michael R. Marrinan, for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel and James M. Chapin, Senior Deputy County Counsel, for Defendants and Respondents.

In a complaint setting forth three causes of action, Roberta Slowikowska sued the San Diego County Sheriff's Department (Department) and Deputy Marshall Abbott

(collectively, defendants) for false arrest/unreasonable search and seizure, excessive force, and (as to the Department) having a custom and practice causing violations of civil rights. The trial court granted summary judgment in defendants' favor, finding the undisputed facts showed defendants were entitled to judgment as a matter of law on the merits and that they were entitled to qualified immunity. On appeal, Slowikowska contends triable issues of fact preclude summary judgment of her false arrest and excessive force claims,[1] and the trial court erred by sustaining defendants' objections to her expert's declaration. We agree that a triable issue of fact precludes summary judgment or summary adjudication of the false arrest cause of action, but conclude defendants are entitled to judgment as a matter of law on the excessive force claim. Accordingly, we do not address Slowikowska's challenge to the trial court's evidentiary ruling. We will reverse the judgment and direct the trial court to enter an order granting summary adjudication of Slowikowska's excessive force and custom-and-practice claims.

FACTUAL AND PROCEDURAL BACKGROUND[2]

*Background*

Slowikowska and her husband live next to a popular beach in Encinitas. Their house has a security camera that points toward the street and front driveway area. The

[1]    Slowikowska does not challenge the trial court's ruling with respect to her cause of action alleging the County has a custom and practice causing civil rights violations.

[2]    Because we construe the facts in the light most favorable to the party opposing summary judgment (see *Faust v. California Portland Cement Co*. (2007) 150 Cal.App.4th 864, 877), our summary of facts is based primarily on Slowikowska's declaration in opposition to defendants' motion.

property is surrounded by a wall that includes a wooden front gate door that locks from the inside and a wooden sliding gate that is also secured from the inside.

On January 20, 2011, Slowikowska observed an unknown man leaning against the wall on her driveway. She walked outside, opened the wooden sliding gate, and asked the man what he was doing on her property. He explained he was doing a land survey, but he was not wearing a uniform or name badge. In response to Slowikowska's request that the man show some form of identification, she and the man walked together toward his truck, which had no business signage. The man handwrote his name on the back of a business card that had someone else's name printed on the front. Slowikowska asked the man to leave and not return.

Slowikowska returned to her house through the wooden gate, locking it from the inside. She noticed the man left a surveying rod on her driveway, so she went back outside and unsuccessfully searched for him. She initially left the rod in her front yard and went back inside, but had second thoughts about leaving the rod there. Slowikowska retrieved the rod, put it in a shed behind her house "for safekeeping," and "secured" the sliding gate from the inside as she returned to her house. A member of the surveying crew called the sheriff's department to report the rod stolen.[3]

Deputy Abbott was dispatched in response to the surveying crew's call about the rod. According to Slowikowska, she first learned of Abbott's response as he was "physically coming into my sliding glass door" and "enter[ing] into my private property

---

[3]     The record indicates the rod has an estimated value of $1,000.

and residence without my permission or consent." She surmised he "had done something to 'jimmy' the lock on [the] front gate to get into the property." Slowikowska began explaining what happened and walked with Abbott to the driveway, bringing her cordless phone with her.

When Abbott asked Slowikowska about the rod, she said she would retrieve it when her husband got home. She dialed her husband's phone number, but Abbott grabbed the phone from her hand, set it on the ground, and grabbed her arm to detain her, warning that if she did not return the rod he would arrest her for felony grand theft. Slowikowska agreed to return the rod, so Abbott let go of her arm. As she led him to the shed where she had placed the rod, Abbott "continually pushed [her] by placing his hand against [her] back as [they] walked in the walkway." When Slowikowska retrieved the rod from the shed, Abbott took it from her and left the property.

*Complaint*

Slowikowska's operative first amended complaint asserts federal civil rights violations for "excessive force," "custom and practice causing violation of . . . civil rights," and "false arrest—including unreasonable search and seizure." (Capitalization omitted.)

*Summary Judgment*

Defendants moved for summary judgment or, in the alternative, summary adjudication. As relevant here, they supported their motion with excerpts from Slowikowska's and Abbott's depositions and a video taken by Slowikowska's security camera which captured Abbott's interactions with Slowikowska on the driveway.

4

In his deposition, Abbott stated he did not believe the front gate was locked, but acknowledged it "was stuck a little bit so [he] shook it . . . and it opened, not with any force." He admitted he did not have permission to enter because "[t]here was no one there to give [him] permission." Abbott saw Slowikowska through a glass door of the house and knocked. When she answered the door, he introduced himself and asked about the surveying rod. Slowikowska asked Abbott, " 'How did you get in [the yard]? The door is locked.' " Abbott responded he did not know it was locked because it opened when he tried to open it. He denied ever entering the house.

Abbott said he walked with Slowikowska to the driveway, where she explained her side of the story. She acknowledged taking the rod because it was left on her private property, and she refused to return it. Abbott told her she had committed a felony. When she then attempted to use her phone, Abbott took it from her hand, told her he was going to detain her, and began gently putting her arms behind her back to handcuff her.[4] Slowikowska offered to return the rod and Abbott let go of her. She led Abbott to the shed, retrieved the rod, and gave it to him. Abbott returned the rod to the surveying crew, who were satisfied to have it returned. Abbott did not arrest Slowikowska. He denied ever entering her house or touching her other than when he took her phone and began placing her hands behind her back.

_____

4    Abbott explained he took the phone from Slowikowska because "if you get family members more involved [when someone is being detained], a lot of times it has a potential to get more volatile, and people get angry and try to intervene . . . ."

5

In opposition to defendants' summary judgment motion, Slowikowska lodged (among other things) her own declaration, excerpts from her deposition, excerpts from Abbott's deposition, and a declaration from Jack Smith, whom she tendered as an expert on police tactics. Regarding her false arrest/unreasonable search and seizure cause of action, Slowikowska stated that despite her securing the gate from inside, Abbott was somehow able to " 'jimmy' " it open and walk into the yard. He then entered her house without her permission and controlled her movements.

Regarding excessive use of force, Slowikowska argued that because Abbott had unlawfully detained her, *any* use of force was excessive. She also stated Abbott "abruptly, violently and aggressively ripped the phone out of [her] right hand"; "violently and aggressively grabbed, pulled and twisted [her] left hand towards the ground with his left hand" in a "twisting motion that torqued [her] body from [her] right to left," causing her to trip and "suffer an injury to [her] knee, ankle, shoulder and wrist"; "twisted [her] arm and [her] leg"; and "continually pushed [her] by placing his hand against [her] back as [they] walked" to the shed to retrieve the rod.

Slowikowska cited Abbott's deposition testimony acknowledging he entered her property without permission, without a search warrant, without being in hot pursuit, and without having observed anyone commit a crime.

Smith's declaration recited his extensive law enforcement career and opined (1) Abbott unlawfully detained Slowikowska and, therefore, any use of force was excessive; (2) Abbott's use of force was also objectively unreasonable; (3) Abbott violated Department policy by failing to report his use of force to a supervisor after the incident;

6

and (4) the Department ratified Abbott's omission by failing to discipline him for it, "illustrat[ing] a common practice and scheme which violates . . . civil rights . . . ." Defendants objected to Smith's declaration, and the trial court sustained their objection.

The trial court granted summary judgment in defendants' favor. The court found there were no triable issues of fact with respect to the lawfulness of the detention, use of force, or Department policy or practice. Because the court found there was no constitutional violation, the court concluded defendants were also entitled to qualified immunity. The court entered judgment in defendants' favor, and Slowikowska appealed.

## DISCUSSION

### I.

### *Summary Judgment Principles*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid.*) If the defendant does not present sufficient evidence to meet its initial burden, the court must deny the summary judgment motion. (*Ibid.*)

Once the defendant satisfies its burden, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar, supra*, 25 Cal.4th at p. 849.) The plaintiff may not rely upon

7

the mere allegations or denials of her pleadings to show a triable issue of material fact exists. (*Ibid*.)

We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Cont'l Mar. of San Diego* (1998) 61 Cal.App.4th 1073, 1079.) Thus, we apply the same three-step analysis trial courts use: "First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts justifying judgment in its favor. Finally, in most cases, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858-859.) In doing so, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.) Because "[s]ummary judgment is a drastic measure that deprives the losing party of a trial on the merits . . . . [,] [a]ny doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Molko v. Holy Spirit Assn*. (1988) 46 Cal.3d 1092, 1107, superseded by statute on other grounds as stated in *Aguilar, supra*, 25 Cal.4th at p. 853, fn. 19.)

If a trial court erroneously grants summary judgment when a factual dispute exists but affects fewer than all causes of action, the appellate court may direct the trial court to enter an order granting summary adjudication of the unaffected causes of action so long

as the moving party alternatively moved for summary adjudication of them.  (See Code Civ. Proc., § 437c, subd. (f)(2); *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1354-1355.)

## II.

*False Arrest/Unreasonable Search and Seizure*

Slowikowska contends the trial court erred by finding in defendants' favor on her false arrest/unreasonable search and seizure claim because factual disputes exist regarding whether Abbott unlawfully entered her house or curtilage.[5]  Although the parties devote much of their briefing to whether Abbott's entry into the yard constituted an unauthorized entry into the curtilage, we need not resolve this issue because a triable issue of fact exists regarding Abbott's entry into Slowikowska's house.[6]  This dispute precludes summary judgment of the complaint and summary adjudication of this cause of

---

[5]     "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' [citation], and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private."  (*Oliver v. United States* (1984) 466 U.S. 170, 180.)

[6]     In any event, the record is not sufficiently developed to enable us to consider all the curtilage factors the United States Supreme Court has articulated.  (See *U.S. v. Dunn* (1987) 480 U.S. 294, 301 ["we believe that curtilage questions should be resolved with particular reference to four factors:  *the proximity of the area claimed to be curtilage to the home*, whether the area is included within an enclosure surrounding the home, *the nature of the uses to which the area is put*, and the steps taken by the resident to protect the area from observation by people passing by."], italics added.)

9

action.  Of note, defendants' briefing does not address the factual dispute regarding Abbott's entry into Slowikowska's house.

The Fourth Amendment protects against unreasonable searches and seizures.[7]  "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."  (*Payton v. New York* (1980) 445 U.S. 573, 586.)  "The same proscription limiting warrantless arrests in the home has been extended to detentions that fall short of formal arrests."  (*People v. Lujano* (2014) 229 Cal.App.4th 175, 182.)  "The presumption of unreasonableness that attaches to a warrantless entry into the home 'can be overcome by a showing of one of the few "specifically established and well-delineated exceptions" to the warrant requirement [citation], such as " 'hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling' " [citation].' . . ."  (*People v. Thompson* (2006) 38 Cal.4th 811, 817-818.)

Slowikowska's third cause of action alleges defendants violated her civil rights when Abbott (1) detained or arrested her without reasonable suspicion or probable cause, and (2) entered her premises.  Defendants' summary judgment motion (1) explained why Abbott had sufficient reasonable suspicion to detain Slowikowska, and (2) relied on his

---

7      "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  (U.S. Const., 4th Amend.)

account that he "contacted [Slowikowska] at the [front] door of the home." In opposition, however, Slowikowska disputed Abbott's version of events and unequivocally stated he not only entered her locked, enclosed yard, but also entered her house without a warrant or consent and controlled her movements. She lodged portions of Abbott's deposition testimony wherein he admitted he entered her property without consent, without a warrant, without being in hot pursuit, and without having seen someone commit a crime. Crediting Slowikowska's testimony, as we must on summary judgment, she created a factual dispute regarding whether Abbott unlawfully entered her house in violation of the Fourth Amendment. Thus, regardless of the curtilage issue, the factual dispute concerning Abbott's entry into Slowikowska's house without a warrant or exigent circumstances precludes summary judgment or adjudication. (See, e.g., *People v. Lujano, supra*, 229 Cal.App.4th at p. 187; *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 975 ["If a cause of action is not shown to be barred in its entirety, no order for summary judgment—or adjudication—can be entered."]; Code Civ. Proc., § 437c, subd. (f)(1).)

### III.

### *Excessive Force*

Slowikowska contends the trial court erred by summarily disposing of her excessive force claim because factual disputes exist regarding Abbott's use of force while initially detaining her on the driveway and while escorting her to retrieve the survey rod. We disagree.

11

"The Fourth Amendment's prohibition on 'unreasonable . . . seizures' protects individuals from excessive force in the context of an arrest or seizure." (*Thompson v. County of Los Angeles* (2006) 142 Cal.App.4th 154, 164 (*Thompson*), quoting U.S. Const., 4th Amend.; see *Graham v. Connor* (1989) 490 U.S. 386, 394 (*Graham*).) "Claims that the amount of force used during an arrest or seizure was excessive are analyzed under the objective reasonableness standard of the Fourth Amendment." (*Thompson*, at p. 164; see *Graham*, at p. 395.)

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the countervailing governmental interests at stake. [Citation.] Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. [Citation.] Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' [citation], however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Graham, supra*, 490 U.S. at p. 396.)

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (*Graham, supra*, 490 U.S. at p. 396.) " 'Not every push or shove, even if it

12

may later seem unnecessary in the peace of a judge's chambers,' [citation], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (*Id.* at p. 397.) Because the balancing required by *Graham* "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . , summary judgment . . . in excessive force cases should be granted sparingly." (*Santos v. Gates* (9th Cir. 2002) 287 F.3d 846, 853.)

We first dispose of Slowikowska's primary argument below—that because "Abbott's arrest of [her] was unjustified and unlawful, *any* use of force against her was excessive." " '[T]he excessive force and false arrest factual inquiries are distinct.' " (*Velazquez v. City of Long Beach* (9th Cir. 2015) 793 F.3d 1010, 1024.) Therefore, merely establishing an unlawful arrest "does not establish an excessive force claim, and vice-versa.' " (*Ibid.*) Every federal appellate court that has considered the argument Slowikowska advances here has rejected it. (*Id.* at p. 1024, fn. 13; see, e.g., *Snell v. City of York* (3d Cir. 2009) 564 F.3d 659, 672 [rejecting as an "effort[] to bootstrap excessive force claims and probable cause challenges" the contention "that the force applied was excessive solely because probable cause was lacking for [plaintiff's] arrest."]; *Freeman v. Gore* (5th Cir. 2007) 483 F.3d 404, 417 ["That the deputies' arrest of [plaintiff] was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive. Rather, [plaintiff]'s excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore

13

analyze the excessive force claim without regard to whether the arrest itself was justified."]; *Bashir v. Rockdale County* (11th Cir. 2006) 445 F.3d 1323, 1332 ["When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."].)

Turning to Abbott's conduct in taking Slowikowska's phone and detaining her on the driveway, we agree that as a matter of law Abbott did not use excessive force. He had been informed that a woman in Slowikowska's house stole someone else's surveying rod valued at $1,000; Slowikowska admitted it was she; and she refused to promptly return the rod to its owners. On this record, Slowikowska cannot credibly argue Abbott lacked probable cause to detain and/or arrest her. Therefore, Abbott was entitled to use *reasonable* force in doing so. (See *Graham, supra*, 490 U.S. at p. 396.)

Although Abbott and Slowikowska's dispute about the force used on the driveway would ordinarily preclude a legal determination of the excessive force claim, here security camera footage enables us to make such a finding. While Slowikowska asserts Abbott "violently and aggressively" took her phone and twisted her arm and leg in a manner that "torqued" her body, and that she "tripped and got up," the video evidence belies these statements. The video shows Abbott take the phone out of Slowikowska's right hand with his left hand; place the phone in his right hand; grab her left arm with his left hand; lean over and gently set the phone on the ground; stand upright; release Slowikowska's hand; and begin walking with Slowikowska toward the house. This entire

14

exchange lasts less than 10 seconds and clearly shows there was nothing violent or aggressive about the force Abbott used.

Under similar circumstances, the United States Supreme Court ruled that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (*Scott v. Harris* (2007) 550 U.S. 372, 380 [disregarding plaintiff's characterization of his driving while evading police where it was "utterly discredited" by police dashboard camera]; see *Weldy v. Hatch* (5th Cir. 2012) 481 Fed.Appx. 119, 123 ["where, as here, we have a videotape, the validity of which is not questioned, we do not need to rely on parties' subjective construction of events"].) This approach was justified here, where Slowikowska's own security camera footage "utterly discredited" her characterization of her encounter with Abbott. (*Scott v. Harris*, at p. 380.)

We similarly agree that even if Abbott "plac[ed] his hand against [Slowikowska's] back as [they] walked in the walkway" to retrieve the surveying rod, this does not constitute excessive force as a matter of law. As noted, Abbott lawfully detained Slowikowska while he investigated her possible commission of a felony. Exercising his discretion, he gave her the option of returning the surveying rod instead of being arrested. When Slowikowska elected to return the rod, Abbott was entitled to continue using *reasonable* force to maintain control over Slowikowska through the conclusion of the detention to ensure his own safety and to ensure she returned the surveying rod expeditiously and did nothing to interfere, such as calling her husband or locking the gate

15

behind her. The record does not support a conclusion that Abbott's alleged use of force under these circumstances was excessive.

IV.

*Qualified Immunity*

Slowikowska contends the trial court also erred by finding Abbott was entitled to qualified immunity. We conclude the factual dispute regarding whether Abbott entered Slowikowska's house precludes summary disposition of his qualified immunity defense to her false arrest/unreasonable search and seizure claim. However, we conclude the trial court properly found Abbott was entitled to qualified immunity on her excessive force claim.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " (*Saucier v. Katz* (2001) 533 U.S. 194, 200 (*Saucier*).) "The privilege is 'an *immunity from suit* rather than a mere defense to liability . . . ." (*Ibid*.) "Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. First, the court must ask whether '[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?' If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the officer acted. That is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the officer could

16

have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.' If the answer is yes, the officer is entitled to qualified immunity. If the answer is no, he is not." (*Skoog v. County of Clackamas* (9th Cir. 2006) 469 F.3d 1221, 1229, fns. omitted.)

### A. *False Arrest/Unreasonable Search and Seizure*

Slowikowska opposed defendants' motion with evidence that Abbott violated her Fourth Amendment rights by entering her house without a warrant (or applicable exception to the warrant requirement). This right was clearly established. (See *Hopkins v. Bonvicino* (9th Cir. 2009) 573 F.3d 752, 774.) Abbott does not argue he entered Slowikowska's house under the reasonably mistaken belief he was permitted to do so; rather, he denies altogether that he ever entered the house. Because defendants introduced no evidence showing Abbott had a reasonably mistaken belief he was allowed to enter Slowikowska's house, defendants did not meet their burden of establishing they were entitled to qualified immunity on this claim.

### B. *Excessive Force*

Because we concluded in part III, *ante*, that Abbott did not use excessive force, Slowikowska's challenge to his qualified immunity defense fails at the first step—whether "the officer's conduct violated a constitutional right." (See *Skoog v. County of Clackamas*, *supra*, 469 F.3d at p. 1229.) Because "the answer is no, the officer is entitled to qualified immunity.' " (*Ibid.*)

17

DISPOSITION

The judgment is reversed. The matter is remanded with directions that the trial court vacate its order granting defendants' motion for summary judgment and enter a new order granting the defendants' motion for summary adjudication of Slowikowska's first cause of action for excessive force and second cause of action for having a custom and practice causing violations of civil rights. All parties are to bear their own costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

18