# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 17, 2007**

Charles R. Fulbruge III
Clerk

No. 05-21015

GENERAL UNIVERSAL SYSTEMS INC; WORLD TRADE SYSTEMS INC

Plaintiffs - Appellants

JOSE S LOPEZ

Plaintiff - Intervenor Defendant - Appellant

ELI NASSAR

Third Party Defendant - Appellant

v.

HAL INC; ET AL

Defendants

HAL INC; JOE R HERRIN; ERNEST ALLEN PARKIN

Defendants - Third Party Plaintiffs Appellees

PANALPINA INC; FRITZ COMPANIES INC; GLOBAL SOUTHPORT SERVICES INC; UNITED STATES CRATING INC; TRANSWORLD LOGISTICS INC

Defendants - Appellees

LARRY MASON LEE; LARRY MASON LEE & ASSOCIATES

Intervenor Plaintiffs - Appellees

No. 05-21015

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before REAVLEY, GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

General Universal Systems, Inc. ("GUS") originally sued HAL, Inc. ("HAL"), Joseph Herrin, and Ernest Allen Parkin ("HAL Defendants") for numerous state and federal claims for stealing proprietary software. GUS also sued a number of companies ("Customer Defendants") to which HAL licensed the software program. We previously ruled on this case in General Universal Systems v. Lee, 379 F.3d 131 (5th Cir. 2004) and determined that a remand to the district court was appropriate to settle the sole remaining claim of trade secret misappropriation under Texas law.

On remand, the magistrate judge granted summary judgment to the HAL Defendants, finding that the statute of limitations had expired prior to the initiation of the lawsuit. Further, the magistrate judge granted summary judgment to the Customer Defendants, finding that the claims against those parties were not included in the scope of the remand from this court.

We must now determine the accrual date of an alleged trade secret misappropriation and whether the claims against the Customer Defendants were within the scope of our remand.

I

The facts of this case were thoroughly recounted in General Universal Systems, 379 F.3d at 137-40. Therefore, we will only address those facts and procedural history relevant to the claim of trade secret misappropriation.

In 1979, GUS developed a software program called CHAMPION PACKER for Jose Lopez. CHAMPION PACKER was written in BASIC 4 computer

2

programming language.  Later, Lopez created a program based on CHAMPION PACKER but written in COBOL computer programming language instead of BASIC 4; Lopez called the new derivative program LOPEZ COBOL and began selling and leasing the program to clients through his company World Trade Systems, Inc.  One of those clients was Superior Packing, Inc., a company owned by Herrin.  In 1988, Lopez leased a computer to Superior Packing and licenced Superior Packing to use LOPEZ COBOL.  At that time, Superior Packing also had a license from GUS to use CHAMPION PACKER; the GUS license originated in 1985.  Both license agreements restricted the use and distribution of the relevant computer programs.

In 1992 Herrin and Parkin agreed to work with Lopez to develop and market a new software program to succeed LOPEZ COBOL.  The three intended to form a corporation, HAL, Inc., to develop and market the software and then split the shares and profits amongst each other.  The program was to be based in large part on LOPEZ COBOL.  They began working on the design of the program, called MEPAW, in the summer of 1992.  Beginning in December 1992, Lopez spent seven months incarcerated in a Mexican prison.  In a letter of March 22, 1993, Herrin notified Lopez that he and Parkin agreed to oust Lopez from their agreement because Lopez's incarceration prevented him from fulfilling his duties.  Through HAL, Herrin and Parkin continued the development of MEPAW until August or September 1993, when they began marketing MEPAW to potential clients.

Just prior to the ousting of Lopez, in February 1993, Herrin sent Lopez a letter stating that Superior Packing was terminating its license agreement with World Trade Systems for the use of LOPEZ COBOL.  In March 1993, Lopez's son went to Superior Packing to pick up World Trade Systems's computer, which contained the LOPEZ COBOL software, but was told that Superior Packing was not finished with the program.  Lopez claims that his son then entered an oral

agreement to allow Superior Packing to use the computer and software until July 1993, and he produced a receipt showing that Superior Packing paid a license fee to World Trade Systems in July 1993.

Although HAL began demonstrating MEPAW in the fall of 1993, it did not license the software to any customers until October 1994; the first licensee was Panalpina, Inc. By then, Lopez and World Trade Systems assigned all their rights in LOPEZ COBOL to GUS. In November 1994, GUS put Panalpina on notice that MEPAW was improperly derived from its packing software. HAL continued to licence MEPAW to other customers as well: Fritz Companies, Inc.; United States Crating, Inc.; and Transworld Logistics, Inc.[1] GUS asserts that all of the Customer Defendants were on notice.

GUS filed suit against the HAL Defendants and the Customer Defendants in May 1995. In that complaint, GUS raised numerous claims, both state and federal, most of which lost on summary judgment; a contract claim went to trial, but the magistrate judge entered judgment as a matter of law for the defendants. On appeal, we affirmed the magistrate judge's ruling on all claims, except the misappropriation of trade secrets claim, on which we reversed and remanded. Following the remand, the magistrate judge granted summary judgment to the defendants, finding the trade secrets misappropriation claim against the HAL Defendants was barred by Texas's two-year statute of limitations and the related claim against the Customer Defendants was outside the scope of our remand.

---

[1] These companies and Panalpina, Inc. are the defendants referred to as the "Customer Defendants." Global Southport Services, Inc. was originally also named as a Customer Defendant, but it was dismissed from the case for failure to serve process. See Final Judgment of District Court, Sep. 15, 2000 at *1-2. That dismissal was never challenged, and Global Southport Services, Inc. was not named as a defendant - appellee in the prior appeal. Therefore, Global Southport Services, Inc. is not subject to GUS's claims in this case.

## II

"We review a grant of summary judgment de novo, applying the same standards as the district court." Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253, 261 (5th Cir. 2007) (footnote omitted). Summary judgment is appropriate if the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence in the light most favorable to the non-moving party)) in this case, GUS. Triple Tee Golf, 485 F.3d at 261.

### A

We look first at the magistrate judge's determination that GUS was time barred from raising its trade secret misappropriation claim against the HAL Defendants on May 23, 1995, the date GUS initially filed its complaint. All parties agree that this claim was subject to a two-year statute of limitations.[2] Therefore, our task is to determine whether all of GUS's claims of trade secret misappropriation accrued before May 23, 1993.

The Texas courts have held that "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). Under Texas law, there are three elements needed to establish the injury of trade secret misappropriation: "(1) a trade secret exists; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization." Triple Tee Golf, 485 F.3d at 261 (citing Guy Carpenter

---

[2] In 1997, Texas law was amended to extend the statute of limitations period to three years. Tex. Civ. Prac. & Rem. Code § 16.010(a). This statute also added a discovery rule to the claim, such that a claim for trade misappropriation did not accrue until the plaintiff knew of or should have known of the violation. The Texas Supreme Court had previously ruled that the discovery rule was not applicable to claims of trade secret misappropriation. Computer Assocs. Int'l v. Altai, Inc., 918 S.W.2d 453, 457 (Tex. 1996).

& Co. v. Provenzale, 334 F.3d 459, 467 (5th Cir. 2003) (applying Texas common law)).[3]

In our prior opinion in this case, only the first and second elements were at issue, and we held that there was a genuine issue of material fact as to each))namely, whether Lopez sufficiently protected his computer software program and whether the agreement between Lopez, Herrin, and Parkin constituted a confidential relationship for the purposes of establishing the elements of the claim. General Universal Sys., 379 F.3d at 150. On remand, the magistrate judge held that it did not need to determine whether LOPEZ COBOL was a trade secret and Lopez's agreement with Herrin and Parkin was a confidential relationship, because even if LOPEZ COBOL were a trade secret and Lopez's agreement were a confidential relationship, GUS's claim accrued before May 23, 1993 and was therefore time barred by the two-year statute of limitations. GUS makes three challenges to this ruling. First, it claims that the HAL Defendants breach of a confidential relationship happened after May 23, 1993. Second, the HAL Defendants did not improperly use LOPEZ COBOL until after May 23, 1993. And third, trade secret misappropriation is a continuing tort so the claim did not accrue until the HAL Defendants stopped using LOPEZ COBOL, which was after May 23, 1993.

1

The magistrate judge applied the ousting of Lopez from HAL as the date on which the relevant confidential relationship would have been dissolved; therefore, the magistrate judge treated any "use" of LOPEZ COBOL after the ousting as the date on which the action accrued. GUS argues that the confidential relationship issue is more complicated, because aside from the

---

[3] GUS is not seeking relief under the Texas Theft Liability Act. Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003. Although, in various pleadings, GUS has made reference to "trade secret theft," the complaint alleges common-law trade secret misappropriation, and GUS has not briefed the claim as being brought under the Texas Theft Liability Act.

agreement between Lopez, Herrin, and Parkin to form HAL, there are two other agreements relevant to our analysis))specifically, the license agreement between GUS and Superior Packing, which allows Superior Packing to use CHAMPION PACKER, and the license agreement between World Trade Systems and Superior Packing, which allows Superior Packing to use LOPEZ COBOL. GUS contends that the CHAMPION PACKER license agreement never expired because Superior Packing never returned the computer and software, and the LOPEZ COBOL license agreement expired at the end of July 1993. As a result, GUS argues that Herrin and Parkin were authorized to use CHAMPION PACKER and LOPEZ COBOL even after they ousted Lopez from the HAL group.

Although during that time, Herrin was the president of Superior Packing and a member of the HAL group, the licenses granted to Superior Packing did not authorize Herrin to utilize the programs to develop a competing software program for a third-party corporation, HAL, which is not a party to either license agreement. It is undisputed that Herrin and Parkin relied on LOPEZ COBOL, and therefore allegedly relied on CHAMPION PACKER, to develop MEPAW for HAL. And GUS even stipulates that HAL, rather than Superior Packing, had a commercially viable version of MEPAW based on LOPEZ COBOL in March 1993. Because these actions cannot be said to be within the scope of GUS's and World Trade System's respective licensing agreements with Superior Packing, these license agreements do not sanction the HAL Defendants' development of MEPAW.

Therefore, the magistrate judge properly focused on the agreement between Lopez, Herrin, and Parkin as the only possible basis for a breached confidential relationship supporting the claim of trade secret misappropriation. Because Lopez was ousted from the HAL group in March 1993, any use of

LOPEZ COBOL by the HAL Defendants after March 1993 would mark the accrual of Lopez's claim of trade secret misappropriation.

2

GUS also challenges the magistrate judge's definition of "use" with respect to the third element of trade secret misappropriation. The magistrate judge held that the HAL Defendants "used" LOPEZ COBOL when they refused to return World Trade Systems's computer containing LOPEZ COBOL in March 1993. The Texas Supreme Court has stated, "A cause of action for misappropriation of trade secrets accrues when the trade secret is actually used." Computer Assocs. Int'l v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996) (emphasis added) (citing Hyde Corp. v. Huffines, 314 S.W.2d 763, 769 (Tex. 1958)). Texas intermediate courts have stated, "'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret." Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 464 (Tex. App. 2004) (citing Atlantic Richfield Co. v. Misty Prods., Inc., 820 S.W.2d 414, 421 (Tex. App. 1991)).[4] And the Restatement Third of Unfair Competition helpfully expands on the definition of "use":

> As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" under this Section. Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through

---

[4] The magistrate judge defined "use" as "'[a]ny misappropriation of trade secrets, followed by an exercise of control and dominion [sic], is considered a commercial use.'" Memorandum and Order of Magistrate Judge, July 29, 2005 at *11 (quoting Garth v. Staktek Corp., 876 S.W.2d 545, 548 (Tex. App. 1994)) (second modification added). This definition, though, has never been employed or approved by the Texas Supreme Court and is not widely used in Texas courts otherwise. Further, it unnecessarily confuses the standard used to define conversion. Green Int'l v. Solis, 951 S.W.2d 384, 391 (Tex. 1997) ("Conversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights.") (citing Bandy v. First State Bank, 835 S.W.2d 609, 622 (Tex. 1992)).

the use of information that is a trade secret (see § 42, Comment f) all constitute "use."

Restatement Third of Unfair Competition, § 40.[5]

Based on these definitions, it is clear the HAL Defendants "used" LOPEZ COBOL, not by refusing to return World Trade System's computer in March 1993, but by continuing to rely on LOPEZ COBOL, either directly or those portions incorporated into MEPAW, to accelerate the development and marketability of MEPAW, as GUS alleges. This continued use of LOPEZ COBOL certainly represents an exploitation of LOPEZ COBOL that was likely to result in injury to Lopez and enrichment to the HAL Defendants, and it occurred both after the ousting of Lopez and before May 23, 1993, two years prior to GUS filing the complaint.

3

GUS further argues that trade secret misappropriation is a continuing tort. "In a continuing-tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops." Upjohn Co. v. Freeman, 885 S.W.2d 538, 542 (Tex. App. 1994) (citing Arquette v. Hancock, 656 S.W.2d 627, 629 (Tex. App. 1983)). For continuing torts, "the cause of action is not complete and does not accrue until the tortious acts have ceased." Twyman v. Twyman, 790 S.W.2d 819, 821 (Tex. App. 1990) (citing Adler v. Beverly Hills Hosp., 594 S.W.2d 153, 156 (Tex. App. 1980)). Because HAL continued to use LOPEZ COBOL after May 23, 1993, GUS argues that HAL's wrongful conduct continued into the period covered by the statute of limitations.

---

[5] Sections on unfair competition, including trade secret misappropriation, appeared in Restatement First of Torts (1939), but were left out of Restatement Second of Torts (1957). These sections now appear in Restatement Third of Unfair Competition. Although Texas courts still often cite to the Restatement of Torts, the Texas Supreme Court has at times relied on the Restatement 3d of Unfair Competition. See, e.g., In re Bass, 113 S.W.3d 735, 739-40 (Tex. 2003) (adopting the criteria for establishing a trade secret employed in Restatement Third of Unfair Competition).

Although often used by Texas intermediate courts, "[t]he Texas Supreme Court has not 'endorsed nor addressed' the concept of the continuing tort doctrine." Walston v. Stewart, 187 S.W.3d 126, 129 (Tex. App. 2006) (quoting Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.8 (Tex. 2005)). Further, the Texas courts have never directly addressed the question of whether trade secret misappropriation was a continuing tort prior to the 1997 legislation) ) legislation that explicitly precludes treating trade secret misappropriation as a continuing tort. Tex. Civ. Prac. & Rem. Code § 16.010(b). Other jurisdictions which have addressed this question are split. Compare Underwater Storage, Inc. v. United States Rubber Co., 371 F.2d 950, 953 (D.C. Cir. 1966) (finding that trade secret misappropriation is a continuing tort); Anaconda Co. v. Metric Tool & Die Co., 485 F. Supp. 410, 426 (E.D. Pa. 1980) (same) with AVCO Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 498 (11th Cir. 1982) (finding that trade secret misappropriation is not a continuing tort); Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 292-93 (9th Cir. 1969) (same).

A close examination of Texas cases, though, reveals that Texas would have unlikely treated trade secret misappropriation as a continuing tort prior to the 1997 legislation. In K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 314 S.W.2d 782 (Tex. 1958), the Texas Supreme Court stated, "The basis of the trade secret case is a 'breach of a contract or wrongful disregard of confidential relationships.'" Id. at 787 (citation omitted). Jurisdictions that adopt the "breach theory" of trade secret misappropriation, as opposed to the "property theory," generally do not treat trade secret misappropriation as a continuing tort. See, e.g., Monolith, 407 F.2d at 293 ("California does not treat trade secrets as if they were property. It is the relationship between the parties at the time the secret is disclosed that is protected. . . . The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage

10

suffered may thereby be aggravated."). Additionally, one intermediate Texas court has stated, "[A]ppellants' cause of action [for trade secret misappropriation] is barred by the applicable statute of limitations, as suit was not brought within two years of the occurrence of the first breach." J.C. Kinley Co. v. Haynie Wire Line Service, Inc., 705 S.W.2d 193, 198 (Tex. App. 1985) (emphasis added). Such a statement is inconsistent with treating the claim as a continuing tort. See also Tavana v. GTE Southwest, No. 05-97-00664-CV, 1999 Tex. App. LEXIS 5365, at *12 (Tex. App. 1999) (applying the pre-1997 cause of action and treating the accrual date as the date of initial use). Other jurisdictions applying Texas law have reached similar conclusions. See Computer Assocs. Int'l v. Altai, Inc., 61 F.3d 6, 7-8 (2d Cir. 1995) (applying Texas law and treating a claim as time barred using an accrual date based on the date of initial breach rather than last date of continued use);[6] Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 643-44 (N.D. Cal. 1993) (rejecting, after a thorough analysis, the argument that Texas law would treat trade secret misappropriation as a continuing tort).

Our caselaw similarly suggests that trade secret misappropriation should not be treated as a continuing tort under Texas law. In Daboub v. Gibbons, 42 F.3d 285 (5th Cir. 1995), although we did not address the specific claim of trade secret misappropriation, we refused to treat claims of misappropriation and unfair competition as a continuing tort under Texas common law. Id. at 291-92.

---

[6] This case has a long and complicated procedural history, including an opinion from the Texas Supreme Court, Computer Assocs. Int'l v. Altai, Inc., 918 S.W.2d 453 (Tex. 1996), answering certified questions from the Second Circuit. Unfortunately, that opinion of the Texas Supreme Court only addresses whether Texas recognizes a discovery rule for trade secret misappropriation and does not discuss the concept of a continuing tort. The Second Circuit opinion similarly does not address the concept of a continuing tort but, in that case, the defendant used the trade secret from, at the latest, 1985 until August 1988, when the plaintiff filed suit. Id. at 454-55. If the court had treated trade secret misappropriation as a continuing tort, then it could not have been deemed time barred, since the trade secret was being used until the date of suit was filed.

The claims stemmed from one band allegedly copying the song of another band. We held that the defendant-band's continued use of the song, through record sales and live performances, demonstrates the "concept of continuing damages, rather than a continuing tort." Id. at 291; see also Skytop Brewster Co. v. Skytop Int'l, No. H-93-0204, 1993 U.S. Dist. LEXIS 20472, at *8 (S.D. Tex. 1993) ("Because Texas has not recognized the applicability of the continuing tort doctrine to a trade secrets claim, Blue Tee's misappropriation of trade secrets counterclaim is not thereby saved from operation of the two year statute of limitations.").

Based on the weight of caselaw, we decline to apply the concept of a continuing tort to the Texas common law claim of trade secret misappropriation, as it was applied prior to 1997. As a result, the magistrate judge properly treated GUS's claim of trade secret misappropriation against the HAL Defendants as time barred.

B

This leaves the question of whether GUS's claims against the Customer Defendants are within the scope of the remand. The magistrate judge ruled that the claims were not within the scope of the remand and, therefore, applying the mandate rule, the magistrate judge granted summary judgment to the Customer Defendants.

"'We review de novo a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand.'" United States v. Elizondo, 475 F.3d 692, 695 (5th Cir. 2007) (quoting United States v. Pineiro, 470 F.3d 200, 204 (5th Cir. 2006)).

"The mandate rule requires a district court on remand to effect our mandate and to do nothing else." United States v. Castillo, 179 F.3d 321, 329 (5th Cir. 1999) (citing United States v. Becerra, 155 F.3d 740, 753 (5th Cir.

1998)). Further, on remand the district court "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (quoting United States v. Becerra, 155 F.3d 740, 753 (5th Cir. 1998)). "In implementing the mandate, the district court must 'take into account the appellate court's opinion and the circumstances it embraces.'" United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004) (quoting Sobley v. Southern Natural Gas Co., 302 F.3d 325, 333 (5th Cir. 2002)). Because the mandate rule is a corollary of the law of the case doctrine, it "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." Castillo, 179 F.3d at 329 (citation omitted).

Our prior opinion and the circumstances it embraces disposed of any issues related to the Customer Defendants through waiver. By failing to brief any arguments against the Customer Defendants, GUS waived any claims against the Customer Defendants. While our prior opinion did not explicitly address the Customer Defendants nor any claim by GUS brought against them, this is not surprising based on the absence of any arguments against the Customer Defendants in GUS's brief in the original appeal. GUS's brief dealt only with arguments against the summary judgment granted to the HAL Defendants. Mere mention of the Customer Defendants in the opening sections of the brief does not suffice to preserve arguments against them on appeal. See, Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp., 75 F.3d 1057, 1067 (5th Cir. 1996) (finding that failure to advance arguments in the body of the appellant's brief, even when those issues were referenced in the Statement of Issues section, resulted in waiver of those arguments).

The disposition of the Customer Defendants' claims is also supported by our treatment of the trade secret claim in our prior opinion. In discussing the

trade secret misappropriation issue, our prior opinion references reversal of the summary judgment motion in favor of HAL and HAL alone. General Universal Systems, 379 F.3d at 152 (reversing the "district court's grant of summary judgment in favor of HAL"). Further, the opinion's concluding paragraph references the seemingly more general Case Number 01-21114, but only refers to a single trade secret claim. Id. at 159. Use of the singular claim would be strange if the panel understood Case Number 01-21114 to include multiple defendants facing varied theories of liability.

Because GUS failed to brief, and thus waived, any arguments against the Customer Defendants on appeal, the district court's judgment finally disposed of any claims against those defendants. As a result, our remand in the prior opinion did not include any claims against the Customer Defendants. Therefore, we affirm the magistrate judge's grant of summary judgment to the Customer Defendants.

III

We AFFIRM the magistrate judge's grant of summary judgment to the HAL Defendants and to the Customer Defendants.