# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 18-60130

————————

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2018

Lyle W. Cayce
Clerk

THOMAS JONES, on behalf of themselves and others similarly situated; JOSEPH CHARLES LOHFINK, on behalf of themselves and others similarly situated; SUE BEAVERS, on behalf of themselves and others similarly situated; RODOLFOA REL, on behalf of themselves and others similarly situated; HAZEL REED THOMAS, on behalf of themselves and others similarly situated,

     Plaintiffs - Appellees

v.

SINGING RIVER HEALTH SERVICES FOUNDATION; SINGING RIVER HEALTH SYSTEM FOUNDATION; SINGING RIVER HOSPITAL SYSTEM FOUNDATION, INCORPORATED; SINGING RIVER HOSPITAL SYSTEM EMPLOYEE BENEFIT FUND, INCORPORATED; SINGING RIVER HOSPITAL SYSTEM; TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION; KPMG, L.L.P.; MICHAEL J. HEIDELBERG; MICHAEL D. TOLLESON; TOMMY LEONARD; LAWRENCE H. COSPER; MORRIS G. STRICKLAND; IRA POLK; STEPHEN NUNENMACHER; HUGO QUINTANA; GARY C. ANDERSON; STEPHANIE BARNES TAYLOR; MICHAEL CREWS;  SINGING RIVER HEALTH SYSTEM; ALLEN CRONIER; MARTIN BYDALEK; WILLIAM DESCHER; JOSEPH VICE; ERIC WASHINGTON; MARVA FAIRLEY-TANNER; GRAYSON CARTER, JR.,

     Defendants - Appellees

v.

CYNTHIA N. ALMOND,

     Interested Party - Appellant

——————————————

No. 18-60130

REGINA COBB, on behalf of themselves and others similarly-situated; ET AL,

Plaintiffs

v.

SINGING RIVER HEALTH SYSTEM; BOARD OF TRUSTEES FOR THE SINGING RIVER HEALTH SYSTEM; MICHAEL J. HEIDELBERG, in their individual and official capacities; MICHAEL D. TOLLESON, in their individual and official capacities; ALLEN L. CRONIER, in their individual and official capacities; TOMMY L. LEONARD, in their individual and official capacities; LAWRENCE H. COSPER, in their individual and official capacities; MORRIS G. STRICKLAND, in their individual and official capacities; IRA S. POLK, in their individual and official capacities; STEPHEN NUNENMACHER, in their individual and official capacities; HUGO QUINTANA, in their individual and official capacities; MARVA FAIRLEY-TANNER, in their individual and official capacities; WILLIAM C. DESCHER, in their individual and official capacities; JOSEPH P. VICE, in their individual and official capacities; MARTIN D. BYDALEK, in their individual and official capacities; ERIC D. WASHINGTON, in their individual and official capacities; G. CHRIS ANDERSON, in their individual and official capacities; KEVIN HOLLAND, in their individual and official capacities,

Defendants - Appellees

v.

CYNTHIA N. ALMOND,

Interested Party - Appellant

_____

MARTHA EZELL LOWE, individually and on behalf of a class of similarly situated employees,

Plaintiff

v.

2

No. 18-60130

SINGING RIVER HEALTH SYSTEM; TRANSAMERICA RETIREMENT
SOLUTIONS CORPORATION; KPMG, L.L.P.; GARY ANDERSON;
MICHAEL CREWS; MICHAEL TOLLESON; STEPHANIE BARNES
TAYLOR; MORRIS STRICKLAND; TOMMY LEONARD,

> Defendants - Appellees

v.

CYNTHIA N. ALMOND,

> Interested Party - Appellant

———————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-447

———————————————

Before HIGGINBOTHAM, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:[*]

Singing River Health System (SRHS) is a not-for-profit health system
with approximately 2,400 employees.[1] In 1983, SRHS created the Employees'
Retirement Plan and Trust (the "Plan"), a defined benefits pension fund.[2] By
its own terms, the Plan could be modified or terminated at any time.[3] Since

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

[1] The facts underlying this action are set forth in more detail in this Court's prior
opinion in this matter. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th
Cir. 2017).

[2] The Plan was established as a successor to the Public Employees' Retirement System
of Mississippi.

[3] *Jones*, 865 F.3d at 289 (noting that "although the Plan states it was established in
confidence that it would continue indefinitely," it also contains a provision stating that SRHS
"reserve[s] the right to terminate the Plan . . . , in whole or in part, at any time").

2008, the Plan has required employees to contribute three percent of their salary, while SRHS has "the sole responsibility for making the [actuarially determined] contributions necessary to provide benefits under the Plan."[4]

From 2009 to 2014, SRHS "failed to make all but one of its contributions needed to maintain the Plan's fiscal integrity."[5] In November 2014, the Board decided to freeze and liquidate the Plan. Certain SRHS retirees immediately sought injunctive relief in the Jackson County Chancery Court, which ordered SRHS not to terminate the Plan. As a result of that order, the Plan was "frozen," meaning that no new contributions came in, but benefit payments continued to go out. In August 2015, the Chancery Court held that, as a matter of law, SRHS was indebted to the Plan for the missed contributions plus lost earnings, a sum exceeding $55 million.

More lawsuits followed, including the three now-consolidated Rule 23 class actions that provide the basis for this appeal, styled as the *Jones*, *Cobb*, and *Lowe* cases. After expedited discovery and several mediation sessions with a court-appointed mediator, the parties developed a settlement agreement. The *Jones* Plaintiffs moved for preliminary approval of the settlement, and the court granted the motion, conditionally certified the class, and approved procedures for notifying class members.

On April 1, 2016, the *Jones* Plaintiffs moved for approval of a final settlement (the "Settlement Agreement"). At its core, the Settlement Agreement requires SRHS to deposit a total of $149,950,000 into the retirement trust under a thirty-five year schedule. This sum represents the $55 million sum owed by SRHS to the Plan for missed contributions and lost earnings from 2009-2014, calculated with a six percent discount rate. SRHS

---

[4] *Id.*

[5] *Id.*

also agreed to pay attorneys' fees of $6.45 million and expenses up to $125,000; the payment schedule called for a full payout by September 2018.[6]

On June 2, 2016, the district court concluded that the Settlement Agreement was fair, reasonable, adequate, and not the product of collusion, and entered an order granting final approval of the settlement. A group of Objectors appealed that order to this Court, arguing that the settlement "is illusory, provides no real protection for class members, and lacks any specificity as to how different class members will be treated should the class be certified and the settlement approved."[7]

On July 27, 2017, we issued an opinion considering each of the Objectors' arguments in turn. Though we made several findings in favor of the proposed Settlement Agreement, we also concluded that the district court "focused too narrowly on SRHS's proffered payments," and not enough on "the hospital's ability to sustain the promised settlement payments, how the settlement affects the plaintiffs, and why class counsel should receive their multimillion dollar fees up-front while significant uncertainty surrounds SRHS's future compliance."[8] We did not hold that "the settlement should not be approved, or cannot be approved as modified."[9] Instead, we held only that the settlement's terms "should have been more thoroughly examined prior to the court's approval."[10] Accordingly, we vacated and remanded for further consideration of four "illustrative" questions:

1. How, and how much, the future stream of SRHS's payments into the Plan, together with existing Plan assets and prospective earnings, will intersect with future claims of Plan

---

[6] Additional terms of the Settlement Agreement are discussed at length in our prior opinion. *See id.* at 290–92.

[7] *Id.* at 291.

[8] *Id.* at 296.

[9] *Id.* at 303.

[10] *Id.*

participants, including, but not limited to, what effect the Settlement has on current retirees;

2. What are SRHS's future revenue projections, showing dollar amounts, assumptions[,] and contingencies, from which a reasonable conclusion is drawn that SRHS has the financial ability to complete performance under the settlement;

3. Why any payments from litigation involving KPMG, Transamerica or related entities are permitted to defray SRHS's payment obligation rather than supplement the settlement for the benefit of class members;

4. Why class counsel's fees should not be tailored to align with the uncertainty and risk that class members will bear.[11]

On remand, the district court ordered supplemental briefing and conducted a supplemental fairness hearing aimed at addressing each of our concerns. After considering the new evidence, the district court once again approved the Settlement Agreement after concluding that it was fair, reasonable, and adequate. The Objectors appealed that order, arguing that "the settling parties have failed to sufficiently answer the four questions asked per the [our] mandate."

Our review at this juncture is narrow. Our prior opinion in this matter establishes the law of the case.[12] This means that we must follow our prior decisions on all legal or factual issues, including "not only . . . issues decided explicitly, but also . . . everything decided 'by necessary implication.'"[13] Moreover, "[t]he mandate rule requires a district court to remand to effect [the

---

[11] *Id.*

[12] "The 'law of the case' doctrine provides that 'a decision of a factual or legal issue by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court . . . .'" *Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989) (quoting *Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003, 1005 (5th Cir. 1982)). *See also Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotation marks omitted).

[13] *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001).

appellate court's] mandate and nothing else."[14] This "forecloses relitigation of issues expressly or impliedly decided by the appellate court."[15] If an appellant fails to brief an issue on the first appeal, that issue is ordinarily waived.[16]

In light of the "strong judicial policy favoring the resolution of disputes through settlement," our appellate review is limited and "an approved settlement will not be upset unless the court clearly abused its discretion."[17] Having reviewed the briefs, the applicable law, and the pertinent portions of the record—and with the benefit of oral argument—we are not persuaded that the district court here abused its discretion. While the Objectors raise a number of issues in their briefing, many of their claims have been waived or merely repackage arguments already raised and rejected in their earlier appeal, and their remaining arguments are without support in the record.

AFFIRMED. The Motion to Strike Appellant's Brief is DENIED AS MOOT.

---

[14] *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (quoting *United States v. Castillo*, 179 F.3d 321, 329 (5th Cir. 1999)) (internal quotation marks omitted).

[15] *Gen. Universal Sys., Inc.*, 500 F.3d at 453 (internal quotation marks omitted).

[16] *See, e.g.*, *id.* at 453–454.

[17] *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. Unit A 1982). *See also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ("The teaching of these cases is that the district court's approval of a proposed settlement may not be overturned on appeal absent an abuse of discretion.").