# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10391

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2020

Lyle W. Cayce
Clerk

JACKED UP, L.L.C.,

> Plaintiff - Appellant

v.

SARA LEE CORPORATION,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-3296

Before KING, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

This appeal marks the second time that this case has come before us. In our prior decision, we remanded so that the district court could determine whether an expert report—the only evidence of damages in the summary-judgment record—was admissible. On remand, the district court concluded that the report was not admissible, and it rejected Jacked Up's attempt to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10391

reopen the summary-judgment record by submitting additional damages evidence. For the following reasons, we AFFIRM.

## I.

## A.

Jacked Up and Sara Lee signed a licensing agreement in September 2011 under which Jacked Up would develop a line of teas, coffees, and cappuccinos that Sara Lee would produce and sell to convenience stores. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 802 (5th Cir. 2017). Shortly after signing the agreement, Sara Lee sold its beverage division to the J.M. Smucker Company, and Smucker declined to assume the licensing agreement. *Id.* at 803. In November 2011, Sara Lee formally terminated the licensing agreement, and Jacked Up sued both Sara Lee and Smucker. *Id.* at 804. The district court granted motions for summary judgment filed by Sara Lee and by Smucker, and it dismissed all of Jacked Up's claims. *Id.*

Jacked Up appealed that decision, and we reversed in part and remanded, concluding that the district court erred by dismissing Jacked Up's breach-of-contract, fraud, and fraudulent-inducement claims against Sara Lee. *Id.* at 808, 811-12. We did not rule on an argument—advanced by Sara Lee as an alternative ground for affirmance—that Jacked Up's evidence of lost profits[1] was too speculative to allow recovery. *Id.* at 816-17. Instead, we remanded so that the district court could determine "whether the Janik Report"—the only lost-profits evidence in the record—"is admissible, and if it is admissible, whether it establishes lost profits with reasonable certainty." *Id.* at 817.

---

[1] We explicitly acknowledged both that "Jacked Up likely could have claimed reliance damages" as an alternative to lost profits and that "counsel for Jacked Up stated at oral argument that Jacked Up does have reliance damages." *Id.* at 816 n.14. We concluded, however, that "such damages are not substantiated in the record or explained in Jacked Up's briefs." *Id.*

No. 19-10391

**B.**

On remand, the district court concluded that the Janik Report was not admissible because it was not "based on sufficient facts or data." Fed. R. Evid. 702.[2] According to the district court, the Janik Report assumed the accuracy of a set of projections prepared by Sara Lee regarding future sales of Jacked Up products, which were set out in a document called the Sara Lee Pro Forma. E.J. Janik, a certified public accountant, then used those projections to estimate Jacked Up's lost profits. The district court was troubled by the fact that Janik did not "conduct[] an independent determination of whether the Sara Lee Pro Forma's projections were valid or reasonable," because it believed that "a company's financial projections are not automatically reliable, such that an expert may rely on the projections without further inquiry or explanation."

Additionally, "evidence presented by Sara Lee"—and credited by the district court—"contradict[ed] Jacked Up's contention that Sara Lee's Pro Forma [wa]s objectively reliable." The district court relied heavily on a declaration signed by Greg Immell, Sara Lee's Director of Marketing for Beverage Products in 2011, which explained why the Sara Lee Pro Forma was "an unlikely prediction of the Jacked Up product's success." Per Immell:

> 41.     Prior to any final agreement with Jacked Up, Sara Lee's senior management had to approve the concept of a relationship with Jacked Up. That meant creating a business case, which would consist of one or more pro forma projections. To create a pro forma projection, the business team, with input from sales and also from Jacked Up, would have to put together its best guess as to how a Jacked Up energy iced tea would perform in the

---

[2] The admissibility of the Janik Report, as a non-dispositive matter, was "referred to a magistrate judge to hear and decide," Fed. R. Civ. P. 72(a), and the district court affirmed the magistrate judge's decision under a "clearly erroneous or contrary to law" standard, 28 U.S.C. § 636(b)(1)(A). Because it is does not affect our resolution of this appeal, we otherwise elide the distinction between the district court and the magistrate judge.

marketplace over the life of a potential agreement with Jacked Up. A pro forma projection also helps me decide whether to even seriously consider moving forward with the new product.

42.     It is my usual practice to prepare three pro formas: a conservative scenario, a middle scenario, and an aggressive scenario. . . .

43.     Jonathan Drake, then a senior executive within the foodservice and beverage division, had asked for a gangbusters scenario to understand the greatest impact if all of [Jacked Up's] and Sara Lee['s] sales enthusiasm were to come to fruition. . . .

44.     I have reviewed [the Sara Lee Pro Forma]. I recognize that pro forma as being the most aggressive, "gangbusters" scenario . . . .

45.     There are four important things to note about the pro formas Sara Lee prepared. First, until there is an actual market test of the product, the assumptions in the pro formas are merely elaborate guesswork by the business and sales teams. . . .

46.     Second, a pro forma is merely the first and very preliminary step in the evaluation process of a new product opportunity. After the market test, and after there were specific and verifiable cost figures to utilize instead of mere assumptions, there would be a second, far more rigorous and comprehensive analysis . . . . In other words, a pro forma was only used by Sara Lee to understand the high level financials of a product opportunity; it is not a business plan or a financial projection upon which Sara Lee would rely. . . .

47.     Third, for the pro formas in this case specifically, we were missing some key information, and therefore the pro formas were particularly high level and based on numerous assumptions. . . . The best the pro forma could do was target an estimated margin; all ultimate price and cost figures would have only been determined via negotiations and market conditions.

48.     Lastly, another important but unverified factor in these pro formas was information received from [Jacked Up], and in particular information about Jacked Up's supposed broad-based customer network. . . . I believe that some of [Jacked Up's] boastfulness and puffery filtered into the pro formas . . . .

No. 19-10391

Because Janik did not explain his decision to use the projections in the Sara Lee Pro Forma and because it considered the Sara Lee Pro Forma to be unreliable, the district court decided that the Janik Report was not admissible.

## C.

Following the district court's determination that the Janik Report was not admissible, Sara Lee moved for summary judgment on Jacked Up's remaining claims, arguing that Jacked Up had no admissible evidence establishing lost profits. In response, Jacked Up submitted a declaration and damages calculation prepared by its owner, Joseph Schmitz. Sara Lee moved to strike that declaration, asserting that Jacked Up violated the Federal Rules of Civil Procedure by failing to timely disclose the evidentiary material underlying its damages computation. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).

The district court granted Sara Lee's motion to strike. Because it believed that it was required to effect our mandate and to do nothing else, the district court refused to consider the additional evidence put forward by Jacked Up on remand. Alternatively, the district court stated that it would not consider the Schmitz Declaration even if it were permitted to do so, because: (i) Jacked Up violated Rule 26(a)(1)(A)(iii) by failing to timely disclose Schmitz's damages calculation; (ii) Jacked Up did not explain—much less justify—that violation; and (iii) that violation was not harmless.

The district court also granted Sara Lee's motion for summary judgment. Since the Janik Report was not admissible, the district court concluded that the summary-judgment record did not contain any competent evidence as to lost profits, the only kind of damages sought by Jacked Up. Consequently, the district court granted summary judgment to Sara Lee. Jacked Up filed a timely notice of appeal.

No. 19-10391

## II.

We review district-court determinations regarding the admissibility of expert evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) for abuse of discretion. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). A decision is an abuse of discretion if it "is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)). The same standard applies when reviewing an admissibility determination as part of an appeal from a grant of summary judgment. *See Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991) (en banc), *abrogated on other grounds by Daubert*, 509 U.S. at 587 & n.5.

A de novo standard of review applies to a district court's interpretation of a remand order. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007). Likewise, we review de novo a district court's decision to grant summary judgment. *Christophersen*, 939 F.2d at 1109.

## III.

The district court did not abuse its discretion when it determined that the Janik Report was not admissible, and our prior decision remanding this case did not allow the district court to reopen the summary-judgment record. It follows that the district court correctly granted summary judgment to Sara Lee. Accordingly, we AFFIRM.

### A.

The district court did not abuse its discretion when it held that the Janik Report was inadmissible. The proponent of expert evidence must prove, by a preponderance, that the evidence is reliable. *MM Steele, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850 (5th Cir. 2015). The reliability inquiry extends "to all aspects of an expert's testimony," including "the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion,

6

et alia." *Knight*, 482 F.3d at 355 (citation omitted). Expert evidence that is not "reliable at each and every step" is not admissible. *Id.*

Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases "the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987); *accord Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012). In the words of the Third Circuit, the "suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 294 (3d Cir. 2012). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 292; *accord Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, No. H-06-3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (Atlas, J.) ("The Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.").

Applying this principle, the Third Circuit affirmed the exclusion of a lost-profits expert where the expert's opinion was based on internal financial projections of "a nascent company, the assumptions underlying which were relatively unknown" to the expert. *ZF Meritor*, 696 F.3d at 293. The Tenth Circuit, albeit applying Rule 703 and not Rule 702, similarly concluded that testimony from a lost-profits expert who based his analysis on someone else's sales projections was inadmissible since "the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial

prediction was reliable, other than the fact that it was the opinion of someone he believed to be an expert who had a financial interest in making an accurate prediction." *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993).

The Janik Report does not contain a word regarding the reliability of the Sara Lee Pro Forma or its preparation. Instead, Janik seems to have assumed that the projections in the Sara Lee Pro Forma were correct and then extrapolated lost-profits figures. Jacked Up attempts to show that Janik meaningfully evaluated the Sara Lee Pro Forma, but those attempts smack of post hoc rationalization. Essentially, Jacked Up points to boilerplate recitations in the Janik Report listing materials "reviewed and/or considered." Jacked Up then looks to those materials and makes confident claims about what Janik *might* have used those materials to conclude. This sort of supposition is not enough to show that the district court clearly erred when it concluded that Janik did not evaluate the projections in the Sara Lee Pro Forma. Similarly, Jacked Up does not point to any record evidence indicating that the district court clearly erred by crediting Immell's declaration regarding the provenance—and, hence, the unreliability—of the Sara Lee Pro Forma. Consequently, we conclude that the district court did not abuse its discretion in excluding the Janik Report.

**B.**

The district court correctly construed our mandate and granted summary judgment. Following remand, a district court must implement the letter and spirit of the appellate mandate. *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015). "The mandate rule requires a district court on remand to effect our mandate and to do nothing else." *Gen. Universal Sys.*, 500 F.3d at 453 (quoting *United States v. Castillo*, 179 F.3d 321, 329 (5th Cir. 1999), *rev'd on other grounds*, 530 U.S. 120 (2000)); *cf. United States v. Marmolejo*, 139 F.3d

528, 531 (5th Cir. 1998) ("The fact that the appellate court did not expressly limit the scope of the remand order did not imply that a full blown sentencing hearing was permissible for a second time, allowing evidence on all issues that would affect the sentencing guidelines. . . . In short, the resentencing court can consider whatever this court directs—no more, no less."). Limiting the scope of remand in this way is sensible because "[r]emand is not the time to bring new issues that could have been raised initially." *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018); *see Gen. Universal Sys.*, 500 F.3d at 453.

We gave the district court specific and explicit instructions regarding how to proceed on remand: "We leave it to the district court to determine whether the Janik Report is admissible, and if it is admissible, whether it establishes lost profits with reasonable certainty." *Jacked Up*, 854 F.3d at 817. These instructions were focused on the Janik Report and did not allow the district court to consider additional issues, such as: (i) whether evidence in the summary-judgement record, other than the Janik Report, could establish Jacked Up's lost profits; (ii) whether new evidence could establish Jacked Up's lost profits; or (iii) whether Jacked Up could pursue reliance or nominal damages. *See Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005) ("Where, as here, further proceedings in the district court are specified in the mandate of the Court of Appeals, the district court is limited to holding such as are directed." (quoting *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001))). Thus, the district court did not err when it refused to consider new damages theories or damages evidence other than the Janik Report, and correlatively, it was proper for the district court to grant summary judgment to Sara Lee.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.