# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2025

Lyle W. Cayce
Clerk

————————

No. 24-10375

————————

DeWolff, Boberg & Associates Incorporated,

*Plaintiff—Appellant*,

*versus*

Justin Pethick; The Randall Powers Company,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-3649

———————————————————————

Before Smith, Clement, and Duncan, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

In 2018, the management consulting firm DeWolff, Boberg & Associates, Inc. (DB&A) hired Justin Pethick as a regional vice president of sales. In 2020, another consulting firm, The Randall Powers Company (the Powers Co.), contacted Pethick about an employment opportunity. After Pethick accepted and began working at the Powers Co., some prospective DB&A clients hired the Powers Co. for consulting. DB&A now contends that Pethick stole its trade secrets and used them to poach clients for the Powers Co.

No. 24-10375

DB&A retained a damages expert to calculate its alleged lost profits. Pethick and the Powers Co. (collectively, Defendants) moved to exclude DB&A's expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and they also moved for summary judgment. The district court excluded DB&A's expert and granted summary judgment to Defendants, citing DB&A's lack of evidence of damages.

Although we have concerns about the accuracy of the district court's *Daubert* analysis, we need not reach that issue because the record contains alternative grounds for summary judgment independent of the *Daubert* ruling. Accordingly, we AFFIRM on those alternative grounds.

## I.

### A.

DB&A is a global management consulting firm founded in 1987 and headquartered in Dallas, Texas. DB&A provides consulting services to various industries such as electronics, food, manufacturing, and defense contractors. Randall Powers, a former DB&A employee, started his own management consulting business, the Powers Co., in 2008. DB&A alleged that the Powers Co. was a direct competitor.

DB&A's business consists of three phases: (1) sales and marketing, (2) analysis, and (3) operations/implementation. The sales-and-marketing phase involves DB&A's business development representatives finding contacts at potential clients and getting them to meet with DB&A's regional vice presidents. The regional vice presidents are then tasked with selling the potential client a two-week analysis, the second phase of DB&A's business. During the analysis, DB&A's team observes the client's internal processes and identifies opportunities to improve productivity. This phase culminates in a project proposal that, if accepted, leads to the operations/implementations phase.

2

DB&A contends that because the management consulting industry is highly competitive in the pursuit of clients, it has "developed and safeguarded sales and marketing processes and strategies that have given DB&A a competitive edge in the market." These processes and strategies generate "information and data gained from decades of experience and thousands of client contacts." DB&A placed this information and data into a database maintained by Salesforce (the Salesforce Database). DB&A also maintained data on its Share Point database (the Share Point Database), including a compilation of data on prospective clients from the defense industry (the DOD List).

DB&A's clients and prospective clients have accounts within the Salesforce Database allegedly containing non-public information, including call notes and meeting history, marketing strategies, and the contact information of key executives and decisionmakers. DB&A contends that it implemented measures to prevent the leakage of data from the Salesforce Database, such as requiring employees to sign non-compete, non-solicitation, and non-disclosure agreements. Access to the database is limited to certain employees on an as-needed basis.

DB&A hired Pethick as a regional vice president in October 2018. In this role, Pethick had access to the Salesforce Database. Pethick signed the non-disclosure, non-compete, and non-solicitation agreements, and his access to the Salesforce Database was password protected.

In April 2020, the Powers Co. reached out to Pethick while he was still with DB&A to discuss an employment opportunity with the Powers Co. Pethick was interested, and on April 24, the Powers Co. sent Pethick an offer letter for the position of Vice President of Sales, which he accepted that day. Despite accepting, Pethick continued working at DB&A. Pethick avers that

he accepted employment with the Powers Co. as he was facing the threat of a furlough at DB&A.

On May 15, 2020, DB&A discovered that an employee of the Powers Co. had emailed a DB&A client at the direction of Pethick. DB&A executives confronted Pethick, who informed them that he was resigning from DB&A that day. DB&A immediately revoked Pethick's access to the Salesforce Database.

DB&A now argues that Pethick diverted three prospective clients from DB&A to the Powers Co.: (1) Sechan Electronics (Sechan), (2) Arcosa Wind Towers (Arcosa), and (3) Beyond Meat.

## B.

On June 10, 2020, DB&A sued Pethick in Texas state court for breach of contract and breach of fiduciary duty. Pethick then removed the case to the Eastern District of Texas, Sherman Division, based on diversity jurisdiction. DB&A later amended its complaint to add a claim for unjust enrichment. At Pethick's request, the case was transferred to the Northern District of Texas, Dallas Division.

Months later, the district court allowed DB&A to amend its complaint again to add the Powers Co. as a defendant and assert a variety of additional claims, including misappropriation of trade secrets. Defendants then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the district court granted in part and denied in part. The district court kept some of DB&A's claims, including the claim against Defendants for misappropriation of trade secrets, the only claim that is relevant for purposes of this appeal.

DB&A retained Dr. Stuart B. Miller as an expert and tasked him with calculating the profits it would have earned had Sechan, Arcosa, and Beyond Meat hired DB&A instead of the Powers Co. for consulting services.

Defendants then filed a *Daubert* motion to exclude Miller, and they also moved for summary judgment. The district court granted both motions, excluding Miller and dismissing all of DB&A's remaining claims.

On appeal, DB&A only contests the exclusion of Miller and the dismissal on summary judgment of its claim for misappropriation of trade secrets. As to the misappropriation claim, the district court held that "this claim necessarily fails as a matter of law" because "the court has already excluded as inadmissible Dr. Miller's testimony—the only evidence of damages that [DB&A] relies upon to raise a fact issue." However, Defendants presented the district court with alternative arguments for summary judgment that did not depend upon the court's *Daubert* ruling. The district court did not consider these arguments because the exclusion of Miller was enough to justify summary judgment on its own. Because Defendants are entitled to summary judgment on these alternative grounds, we focus on them and need not address the district court's *Daubert* ruling.

## II.

A grant of summary judgment is reviewed de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence," which "shift[s] to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam). "The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering

depositions, affidavits, and other competent evidence to buttress its claim." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

### III.

Defendants moved for summary judgment as to DB&A's claim for misappropriation of trade secrets. To prevail on a misappropriation claim under Texas law, "a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 273 (5th Cir. 2009) (quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 376 (5th Cir. 1999)).

Defendants' first alternative argument for summary judgment is that the information DB&A offered as its protected trade secrets fails to qualify as such. DB&A counters that it identified trade secrets from both its Salesforce and Share Point Databases. The trade-secret information from its Salesforce Database allegedly included: (1) confidential contact information for Arcosa, Sechan, and Beyond Meat; (2) "[d]emographic information, historical information, notes from prior meetings, [and] notes regarding specific needs or issues" from the three prospective clients; and (3) "[d]ocuments and ESI containing confidential information related to business opportunities" with the prospects. From the Share Point Database, DB&A identified the DOD List and other documents. As evidence in support of these trade secrets, DB&A cites to a large portion of data pulled from its Salesforce Database, identified as "Exhibit X," and to the DOD List.

Defendants are correct that DB&A's labeling large swathes of database information trade secrets is "vastly overbroad," and that DB&A failed to distinguish between the public information in its Salesforce Database and the non-public information. More importantly, DB&A has not identified

what specific information within its database constitutes a trade secret. DB&A directs this court's attention to Exhibit X, but not only is much of that exhibit redacted (with no citation to a sealed, unredacted version for the court to review), DB&A fails to distinguish between what information within Exhibit X is a trade secret and what information is not. DB&A generally describes "confidential contact information" or "notes from prior meetings," but nowhere is that information identified with specificity. And "[w]e have no obligation to 'sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 703 (5th Cir. 2020) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

The same problem arises with respect to the DOD List. From the face of the document, it is not obvious that the DOD List contains confidential or proprietary information. DB&A told the district court that the DOD List contained confidential contacts at other companies, but the individuals listed in the document are affiliated with DB&A. Without any additional information, this court cannot say that the DOD List creates a genuine dispute of material fact as to whether DB&A has presented legitimate trade secrets. Although the district court did not grant summary judgment on this basis, "we can affirm the lower court's decision on any grounds supported by the record." *United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995). DB&A's failure to identify a trade secret is one such ground.

Even assuming the Salesforce Database and DOD List contained proper trade secrets, however, summary judgment would still be appropriate for the second reason identified by Defendants: There is no evidence of Pethick's or the Powers Co.'s use or disclosure of any trade secret. The third element of a misappropriation claim is the use of the trade secret without authorization. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th

Cir. 2007) "Use" here means commercial use, by which an entity seeks to profit. *Id.* at 450.

Besides the allegedly suspicious timeline of the prospective clients hiring the Powers Co. after Pethick left DB&A, the only evidence from DB&A that Pethick actually used or disclosed trade secrets is an email from Pethick requesting a copy of the DOD List before leaving for the Powers Co. But as Defendants point out, when Pethick had his computer imaged by a forensic specialist to delete any DB&A data, the DOD List was not even one of the documents on the computer. DB&A has no evidence that Pethick actually possessed the DOD List while at the Powers Co. More broadly, DB&A has failed to show Pethick's or the Power Co.'s use of any alleged trade secret, and thus Defendants are entitled to summary judgment on that basis as well.

* * *

Accordingly, we AFFIRM the summary-judgment dismissal of DB&A's misappropriation claim on the above alternative grounds.