# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2023

Lyle W. Cayce
Clerk

———————————

No. 20-50750

———————————

IAS Services Group, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Jim Buckley & Associates, Incorporated; James Buckley, *Individually, and as Co-Trustee of* the Buckley Family Trust Dated 06/21/01; Barbara Buckley, *Individually, and as Co-Trustee of* the Buckley Family Trust dated 06/21/01,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-180

———————————————————————

Before Richman, *Chief Judge*, and Smith and Graves, *Circuit Judges*.
Priscilla Richman, *Chief Judge*:*

IAS Services Group, L.L.C. (IAS) acquired Jim Buckley & Associates, Inc. (JBA) via an asset purchase agreement. Several years later, IAS filed suit against JBA, as well as Jim and Barbara Buckley, alleging, among other things, fraudulent inducement and breach of the asset purchase agreement. JBA and

———————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 20-50750

the Buckleys counterclaimed, alleging breach of other relevant contracts. After two bench trials and an appeal, IAS appeals the district court's judgment in the second trial in favor of JBA and the Buckleys.

## I

IAS is an independent loss adjusting firm for property casualty insurance carriers. In 2011, the then-president of IAS, Larry Cochran, sought to expand IAS's business through the acquisition of another adjusting firm. IAS retained an investment firm specializing in acquisitions within the insurance industry, StoneRidge Advisors, LLC ("StoneRidge"), which suggested that IAS consider the acquisition of JBA, an insurance adjusting firm based in California and owned by Jim Buckley (Buckley) and Barbara Buckley (collectively, the Buckleys). In early 2011, before any offers were exchanged between IAS and JBA, the parties then executed a Confidentiality and Nondisclosure Agreement (the NDA) that prohibited either side from discussing the potential transaction with third parties, including JBA's clients. StoneRidge then conducted preliminary due diligence on JBA's financial records.

JBA rejected IAS's initial offer and proposed a higher cash payment plus a $1.5 million earn-out payable over three years in which Buckley, rather than IAS, would bear the risk of lost clients and revenue. IAS submitted a counteroffer with a $3.6 million purchase price, consisting of a $2.4 million cash payment and a $1.2 million seller note payable over five equal, annual installments ("Seller Note"), as well as a five-year employment agreement between IAS and Buckley, including an annual salary of $250,000 ("Employment Agreement"). JBA accepted the offer, and in June 2011, IAS and JBA signed a non-binding letter of intent reflecting as such. The parties agreed the transaction would not be consummated until "the satisfactory

2

outcome of [their] due diligence," which was expressly to include "a particular focus on JBA's customers."

Between June and October 2011, the parties negotiated the terms of the Asset Purchase Agreement ("APA") and related documents and continued the due diligence process. The materials that JBA provided to IAS during the process showed that a substantial portion of JBA's revenue and billings came from "one huge client"—QBE First Insurance Agency, Inc. ("QBE")—although IAS could not discern QBE's identity at the time because JBA's clients were coded in JBA's records.

In July 2011, Cochran of IAS and Jay Poorman of StoneRidge met Buckley in JBA's office in Anaheim, California, to acquire more due diligence information regarding JBA's employees and its relationships with its clients. Though the meeting occurred in JBA's office, Buckley did not permit Cochran or Poorman to speak with any JBA employees other than himself and Barbara Buckley. During the meeting, Cochran asked Buckley about the strength of JBA's relationship with QBE. In response, Buckley volunteered that JBA was the "number one vendor" on QBE's vendor panel. Buckley testified at trial that he remembered stating that JBA was "number one" to QBE "in California in [JBA's] market or number one where [JBA] serviced." Cochran and StoneRidge considered the ranking important, as an adjusting firm's position at the top of a vendor panel can be difficult to gain and dislodge. Cochran then asked whether Buckley would permit IAS to speak to QBE. Buckley refused, stating that it would be better if he handled conversations with JBA's clients himself. Buckley did not disclose, in the July 2011 meeting or at any time before the execution of the APA, that JBA had not ranked first on any of QBE's self-produced and circulated vendor rankings since June 2009.

In October 2011, a few days before the execution of the APA ("the Closing"), Buckley sent a text message and an email to Cochran discussing QBE and the "merge of claims." Cochran interpreted that correspondence as confirmation that Buckley had discussed IAS's acquisition of JBA with QBE and obtained QBE's consent to assign the contract between JBA and QBE ("QBE Contract"), which was not assignable without QBE's prior written consent. But neither Buckley nor JBA had obtained QBE's consent. IAS and JBA eventually executed the APA, with Paragraph 2.3 providing that the execution would not "result in a breach of, constitute a default under, . . . [or] create in any party the right to accelerate, terminate, modify, or cancel . . . any Contract . . . to which the Seller, the Owner or the Beneficial Owners is a party . . . ." The parties also executed the Seller Note; the Employment Agreement; and the Assignment of Contracts, which assigned all of JBA's contracts with its clients (including QBE) to IAS. Within days of the Closing, QBE discontinued all assignments of new business to IAS and refused to consent to the transfer of its contract to IAS, with IAS receiving nothing more than a few "tail claims" sent prior to the Closing. QBE officially terminated the QBE Contract in December 2011.

In early 2014, IAS terminated Buckley and filed suit against JBA and the Buckleys, asserting claims for fraud, fraudulent inducement, fraud by nondisclosure, and breach of contract (i.e., breach of the APA). JBA and the Buckleys moved to dismiss all claims. The district court dismissed all of IAS's fraud-related claims, leaving IAS with a single claim for breach of contract. JBA and the Buckleys filed counterclaims alleging that IAS breached the Seller Note by refusing to pay what IAS owed under the promissory note and the Employment Agreement by wrongfully terminating Buckley "without cause." After a bench trial, the district court ruled for JBA and the Buckleys on all claims (adopting their proposed findings of fact and conclusions of law in their entirety), awarded JBA damages on its claim for

breach of the Seller Note and unsegregated attorneys' fees and expenses, and awarded Buckley damages on his claim for breach of the Employment Agreement ("EA-Breach Claim"). IAS appealed. This court reversed the district court's dismissal of IAS's fraudulent inducement claim, affirmed the district court's judgment in favor of JBA and the Buckleys on IAS's breach of the APA claim, vacated the district court's award of severance pay to Buckley through the EA-Breach Claim, and remanded for further proceedings consistent with the opinion.

After the second bench trial, the district court issued an Order Regarding Entry of Judgment Following Remand, adopting JBA and the Buckleys' proposed findings of fact and conclusions of law with no material changes and holding in favor of JBA and the Buckleys on IAS's fraudulent inducement claim. JBA and the Buckleys then filed a motion seeking all of their attorneys' fees and expenses associated with the first appeal and the second trial on remand. IAS opposed the motion, arguing that JBA's and the Buckleys' fees must be reduced by amounts associated with the vacated severance pay award, as IAS was the prevailing party on that claim, and that JBA and the Buckleys were not entitled to any of their attorneys' fees and expenses for the second trial on remand, as that trial exclusively concerned fraud claims for which attorneys' fees cannot be awarded under Texas law. IAS also submitted its own motion seeking attorneys' fees associated with the defense of Buckley's EA-Breach Claim. The district court awarded JBA and the Buckleys all of their attorneys' fees and expenses for the first appeal and the second trial. The court then awarded IAS attorneys' fees for its successful defense of Buckley's EA-Breach Claim, recognizing that IAS was the "prevailing party on appeal," but refused to order JBA and the Buckleys to segregate their fees on that issue. After the district court entered its Amended Final Judgment, and denied several post-judgment motions, IAS timely filed its second appeal.

No. 20-50750

On appeal, IAS contends that the district court erred in holding that two alleged misrepresentations by Jim Buckley and JBA, respectively, did not constitute fraudulent inducement, and that the district court abused its discretion in awarding attorneys' fees to JBA and the Buckleys.

## II

IAS argues two alleged misrepresentations fraudulently induced IAS to enter into the APA: (1) Buckley's representation in the July 2011 meeting that JBA was QBE's "number one" vendor and (2) JBA's representation in Paragraph 2.3 of the APA that the execution of the APA would not result in a breach, or constitute a default of, another agreement of JBA's.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo."[1] Mixed questions of law and fact are reviewed de novo.[2] Because "[f]raudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof,'"[3] "the elements of fraud must be established as they relate to an agreement between the parties."[4] To establish a fraudulent inducement claim under Texas law, a plaintiff must prove that:

> (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or

---

[1] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (per curiam) (quoting *Barto v. Shore Constr., L.L.C.*, 801 F.3d 465, 471 (5th Cir. 2015)).

[2] *Eni US Operating Co. v. Transocean Offshore Deepwater Drilling, Inc.*, 919 F.3d 931, 934 (5th Cir. 2019) (citing *In re Luhr Bros., Inc.*, 325 F.3d 681, 684 (5th Cir. 2003)).

[3] *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) (quoting *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)).

[4] *Bohnsack*, 668 F.3d at 277 (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001)).

lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.[5]

## A

As for the first alleged misrepresentation, while no party disputes that during the July 2011 meeting Buckley made a representation to the effect that JBA was QBE's "number one" vendor, the parties dispute whether the representation was geographically limited to California. The district court characterized Buckley's representation as "the statement about JBA's 'number one' relationship with QBE in the California market it served." Regardless of whether the "number one" representation was geographically limited, the district court did not err in holding that IAS cannot establish that IAS's alleged reliance on Buckley's statement caused IAS injury, and therefore did not err in holding that IAS cannot establish all five elements of fraudulent inducement based on that representation.

Because injury is a question of fact, we review for clear error.[6] "A finding is clearly erroneous if, after viewing the evidence in its entirety, we are 'left with the definite and firm conviction that a mistake has been committed.'"[7] The Fourteenth Court of Appeals of Texas has held that

---

[5] *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (citing *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)).

[6] *Cf. Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017) ("The issue of justifiable reliance is generally a question of fact.") (cleaned up); *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 568 (5th Cir. 2005) (treating fraudulent intent in a non-disclosure claim as a question of fact).

[7] *IAS Servs. Grp.*, 900 F.3d at 652 (quoting *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258-59 (5th Cir. 2006)); *see also Ali v. Stephens*, 822 F.3d 776, 783-84 (5th Cir. 2016) (holding that we must accept the district court's factual findings if they are "plausible in light of the record viewed in its entirety," and we "may not second-

No. 20-50750

injury or "'damage' should not be restricted to a monetary loss," and "it is sufficient if the defrauded party has been induced to incur legal liabilities or obligations different from that represented or contracted for."[8]

IAS contends its reliance on Buckley's "number one" statement injured IAS by inducing IAS to overpay for JBA in the APA. But as the district court correctly noted, Buckley did not state that JBA was QBE's "number one" vendor "until after JBA had disclosed the identities of its clients to IAS, and the parties had agreed upon a purchase price IAS offered that was solely based on undisputedly[ ]accurate financial due diligence information." Thus, "Buckley's after-the-fact statement could not have induced IAS to purchase JBA for a price that it had already offered to pay [months before] based upon the specific, admittedly accurate information IAS had requested."

Because we are not left with the definite and firm conviction that a mistake has been committed, the district court did not clearly err in holding that IAS cannot establish that its alleged reliance on Buckley's "number one" vendor representation caused IAS injury. Accordingly, the district court did not err in holding that IAS cannot establish fraudulent inducement based on that representation.

---

guess the district court's resolution of conflicting testimony or its choice of which experts to believe.") (first quoting *Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 296 (5th Cir. 2008); and then quoting *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 365 (5th Cir. 2009) (per curiam))).

[8] *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Russell v. Indus. Transp. Co.*, 258 S.W. 462, 464 (Tex. 1924)); *cf. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (describing the two measures Texas recognizes for calculating direct damages in common-law fraud claims, the out-of-pocket measure and the benefit-of-the-bargain measure).

No. 20-50750

**B**

As for the second alleged misrepresentation, IAS contends that JBA fraudulently induced IAS into entering the APA by misrepresenting that JBA had secured QBE's consent to assign the QBE Contract prior to Closing by providing in Paragraph 2.3 of the APA that execution of the APA would not "result in a breach of, constitute a default under, . . . [or] create in any party the right to accelerate, terminate, modify, or cancel . . . any Contract . . . to which the Seller, the Owner or the Beneficial Owners is a party . . . ."

It is undisputed that: IAS and JBA executed an NDA which provided that neither IAS nor JBA would contact any third parties, such as QBE, and inform them of the transaction for two years or until after Closing[9]; the Assignment of Contracts required JBA to assign its contracts "as the same exist as of the execution of this Assignment"; the QBE Contract was not assignable without QBE's prior written consent; Paragraph 4.2 of the APA, titled "Non-Assignable Contracts," required JBA to use "commercially reasonable efforts" to obtain "valid and effective assignment" not obtained by Closing; and IAS and JBA's execution of the APA breached the QBE Contract, as JBA did not secure QBE's prior written consent to assign the QBE Contract to IAS. Given that Paragraph 2.3 provides that execution of the APA would not result in the breach of another agreement of JBA's, and the QBE Contract did not allow assignment without QBE's prior written consent (which was not obtained), it is likely that Paragraph 2.3 was a misrepresentation. Regardless, IAS cannot establish that the representation

_____

[9] IAS points out that the NDA only forbids IAS and JBA from contacting third parties "without prior written approval of the other." This does not change our analysis, as IAS does not contend that JBA asked for or received such approval.

No. 20-50750

was material, and therefore cannot establish fraudulent inducement based on that representation.

Because materiality is a mixed question of law and fact, we review the district court's findings and conclusions de novo.[10]　A representation is material if "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question."[11]　Cochran of IAS testified that he read and understood the QBE Contract before Closing, which stated that it was not assignable without prior written consent.　He testified that he understood that the NDA prohibited client contact regarding the transaction, but simply assumed and expected that Buckley would approach clients, such as QBE, in breach of the NDA to obtain their consent based on the advice of Cochran's advisors that "it was very customary, more often than not, for companies to ignore that part of the NDA when you're in the transaction" because "[i]t's all really for the benefit of both parties to ignore that NDA at that point." Cochran also testified that he and IAS understood that there was no guarantee that QBE would continue its relationship with JBA/IAS after Closing, and he also acknowledged that he understood the risk that QBE could have consented and then never assigned another claim to JBA/IAS.

Given Cochran's knowledge that the QBE Contract was not assignable without QBE's prior written consent, the NDA's prohibition of contact with QBE regarding the transaction between IAS and JBA, and IAS's decision to enter into the APA with full knowledge of the risk that QBE could discontinue sending JBA or IAS business and revenue at any time, with or

---

[10] *In re Westcap Enters.*, 230 F.3d 717, 725 (5th Cir. 2000).

[11] *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.)).

No. 20-50750

without an assignment of the QBE Contract, a reasonable person would not attach importance to and be induced to act on Paragraph 2.3, specifically, in determining his choice of actions regarding the APA. Thus, the representation was immaterial, and the district court did not err in holding that IAS cannot establish fraudulent inducement based on it.

Accordingly, we affirm the district court's judgment regarding IAS's fraudulent inducement claim.

### III

IAS also contends that the district court improperly awarded attorneys' fees to JBA and the Buckleys. Generally, "a claimant must segregate legal fees accrued for those claims for which attorneys['] fees are recoverable from those that are not."[12] IAS argues that the district court failed to segregate JBA's and the Buckleys' unrecoverable attorneys' fees related to Buckley's "severance claim" under his Employment Agreement and IAS's fraudulent inducement claim. We review a district court's award of attorneys' fees for an abuse of discretion.[13]

### A

After the district court determined in the first trial that IAS breached its Employment Agreement with Buckley, this court vacated the district court's award of severance pay to Buckley from that agreement because Buckley "failed to satisfy the second condition precedent to his receipt of

---

[12] *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006)); *see also ATOM Instrument Corp. v. Petroleum Analyzer Co. (In re ATOM Instrument Corp.)*, 969 F.3d 210, 216-17 (5th Cir. 2020), *as revised* (Sept. 17, 2020).

[13] *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 319 (5th Cir. 2020); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 461-62 (5th Cir. 2002).

severance pay: execution of the required release and waiver."[14] In the second trial, deeming IAS "the prevailing party on appeal," the district court awarded IAS its fees related to the severance pay award from the first trial and appeal, but did not alter JBA's and the Buckleys' award of fees related to that same issue.

## 1

In the second trial, the district court determined that the waiver doctrine and the mandate rule preclude IAS from arguing that JBA and the Buckleys must segregate their attorneys' fees related to the severance pay issue in the first trial because IAS did not raise that issue in the first appeal. We review de novo whether the waiver doctrine or the mandate rule forecloses any of the district court's actions on remand.[15]

"The waiver doctrine 'holds that an issue that could have been but was *not* raised on appeal is forfeited and may not be revisited by the district court on remand,'" and "prevents [this court] from considering such an issue during a second appeal."[16]  But "notices of appeal are liberally construed," and we "require a showing of prejudice to preclude review of issues 'fairly inferred' from the notice and subsequent filings."[17]  During the first appeal, IAS included in its notice of appeal a general reference to the attorneys' fee award from the first trial, argued in its briefs that "the

---

[14] *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 653 (5th Cir. 2018).

[15] *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007).

[16] *Lindquist v. City of Pasadena*, 669 F.3d 225, 239 (5th Cir. 2012) (quoting *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011)).

[17] *Williams v. Henagan*, 595 F.3d 610, 616 (5th Cir. 2010) (per curiam) (first quoting *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 847 n.3 (5th Cir. 1993); and then quoting *Morin v. Moore*, 309 F.3d 316, 321 (5th Cir. 2002)).

judgment awarding severance pay must be reversed and rendered against Mr. Buckley," and requested in the "Summary of the Arguments" section of its opening brief that this court "remand[] to the district court for a determination of damages, attorney's fees and costs for IAS." Unlike the cases JBA and the Buckleys cite to support application of the waiver rule, the issue of JBA's and the Buckleys' attorneys' fees related to the severance pay award could be fairly inferred from the liberally construed notice of appeal and subsequent filings. Moreover, JBA has made no showing of prejudice to preclude review.

"The mandate rule requires a district court on remand to effect our mandate and to do nothing else."[18] "A remand made without deciding anything, apart from directing further proceedings, determines only that the further proceedings must be had."[19] This court's opinion and broad mandate remanding "for further proceedings consistent with [the] opinion"[20] did not prevent the district court from revisiting its award of fees to IAS for the severance pay issue, and therefore it should not prevent the district court from revisiting its award of fees to JBA and the Buckleys for the same issue.

The waiver doctrine and mandate rule did not preclude the district court from addressing IAS's argument regarding the EA-Breach Claim on remand.

---

[18] *HAL, Inc.*, 500 F.3d at 453 (quoting *United States v. Castillo*, 179 F.3d 321, 329 (5th Cir. 1999), *rev'd on other grounds*, 530 U.S. 120 (2000)); *accord M.D. by Stukenberg v. Abbott*, 977 F.3d 479, 482 (5th Cir. 2020) ("It is black-letter law that a district court must comply with a mandate issued by an appellate court." (citing *HAL, Inc.*, 500 F.3d at 453)).

[19] *Holder*, 634 F.3d at 836 n.4 (quoting 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.3 (2d ed. 2002)).

[20] *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 653 (5th Cir. 2018).

No. 20-50750

**2**

Whether the district court's ultimate decision not to segregate JBA's and the Buckleys' attorneys' fees for Buckley's EA-Breach Claim in the first trial and appeal was an abuse of discretion depends on whether Buckley's Employment Agreement contains a specific attorneys' fees provision allowing for the recovery of fees related to the EA-Breach Claim.[21]  The Employment Agreement provides that "[i]f any party to this Agreement brings any action . . . to enforce or interpret the terms of this Agreement, the substantially prevailing party will be entitled to recover from the other party to this Agreement reasonable attorneys' fees . . . associated with such action . . . ."

Buckley's EA-Breach Claim triggered the Employment Agreement's fee-shifting provision because IAS refused to pay Buckley the severance pay that the Employment Agreement specified IAS pay if IAS terminated Buckley "without cause" before a certain date and Buckley brought his EA-Breach Claim "to enforce" the Employment Agreement accordingly. Because IAS—not JBA or the Buckleys—was the "substantially prevailing party" regarding the EA-Breach Claim in the first appeal, the district court abused its discretion by refusing to order that JBA and the Buckleys segregate all their attorneys' fees related to Buckley's EA-Breach Claim, as the Employment Agreement does not allow for JBA's and the Buckleys' recovery of those fees.  Accordingly, we reverse the district court's award of attorneys' fees to JBA and the Buckleys related to Buckley's EA-Breach Claim in the first trial and appeal.

---

[21] *Cf. Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006) ("For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract.").

**B**

Regarding the award of attorneys' fees to JBA and the Buckleys related to IAS's fraudulent inducement claim in the first appeal and second trial, under Texas law, "fees are [generally] not allowed for torts like fraud."[22] Neither of the exceptions that JBA and the Buckleys cite to this general rule applies. Consequently, the district court abused its discretion in failing to segregate JBA's and the Buckleys' attorneys' fees related to IAS's fraudulent inducement claim in the first appeal and second trial, and we reverse and remand the district court's award of attorneys' fees to JBA and the Buckleys accordingly.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment as to IAS's fraudulent inducement claim, REVERSE the award of attorneys' fees to JBA and the Buckleys related to Buckley's claim for breach of the Employment Agreement in the first trial and appeal, and REVERSE and REMAND the award of attorneys' fees to JBA and the Buckleys related to IAS's fraudulent inducement claim in the first appeal and second trial in accordance with this opinion.

---

[22] *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 667 (Tex. 2009) (citing *Chapa*, 212 S.W.3d at 311-14).